## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| ABDULKADIR SHARIF ALI, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) 1:22CV259 |
| | ) |
| EDDIE M. BUFFALOE, JR., | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition"). (Docket Entry 1.) Respondent has moved to dismiss the Petition under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Docket Entry 7 (the "Motion"); see also Docket Entry 8 (Supporting Brief).) For the reasons that follow, the Court should convert the Motion to a motion for summary judgment, grant summary judgment for Respondent as to Petitioner's hearing recorder subclaim, and deny summary judgment on all of Petitioner's remaining subclaims.

## I.  Background

On August 8, 2014, a jury in the Superior Court of Guilford County found Petitioner (and his co-defendant) guilty of attempted robbery with a dangerous weapon, conspiracy to commit robbery with a dangerous weapon, assault with a deadly weapon inflicting serious injury, and first degree burglary in cases 13 CRS 100094, 100098, 10099, and 14 CRS 24118. See State v. Sheikh, No. COA-15-688, 786 S.E.2d 433 (table), 2016 WL 1744651, at *1 (N.C. Ct. App. May 3,

2016) (unpublished). The trial court sentenced Petitioner to three consecutive prison terms of 59 to 83 months, 59 to 83 months, and 23 to 40 months. See id. at *2.[1]

A Disciplinary Hearing Officer ("DHO") at the Tabor Correctional Institution (where Petitioner was serving his sentences for the underlying convictions described above) convicted Petitioner after a hearing of disciplinary offense "A-12" for "substance possession/failed urinalysis". (See Docket Entry 1, ¶¶ 1, 5-7.) As a result of that conviction, the DHO sentenced Petitioner to, inter alia, 30 days in restrictive housing for disciplinary purposes ("RHDP") (see id., ¶ 3), and the loss of 40 days of sentence reduction credits (see id. at 14).[2] Thereafter, prison officials denied Petitioner's appeal and upheld his disciplinary convictions and sentences. (See id., ¶ 9.)

Petitioner subsequently submitted his instant Petition seeking restoration of the 40 days of sentence reduction credits to the United States District Court for the Western District of North Carolina (see id. at 1, 14), along with a motion for appointment of

---

[1] The North Carolina Court of Appeals found no error in Petitioner's convictions and sentences, Sheikh, 2016 WL 1744651, at *2, the North Carolina Supreme Court denied Petitioner's petition for discretionary review ("PDR"), State v. Sheikh, 369 N.C. 39 (2016), and the United States Supreme Court denied Petitioner's petition for a writ of certiorari, Ali v. North Carolina, ___ U.S. ___, 137 S. Ct. 1218 (2017). After the trial court denied Petitioner's Motion for Appropriate Relief ("MAR") collaterally challenging his convictions and sentences, this Court dismissed with prejudice Petitioner's action under 28 U.S.C. § 2254 attacking his underlying convictions and sentences without issuance of a certificate of appealability. See Ali v. Hooks, No. 17CV1034, 2018 WL 3421338, at *1 (M.D.N.C. July 13, 2018) (unpublished), recommendation adopted, slip op. (M.D.N.C. Sept. 4, 2018) (Biggs, J.).

[2] Throughout this Recommendation, pin citations refer to the page numbers in the footer appended to those materials at the time of their docketing in the CM/ECF system.

counsel (Docket Entry 2). That court transferred the case to this Court (see Docket Entries 3, 4), which denied the motion for appointment of counsel and ordered Respondent to answer the Petition (Docket Entry 5). Respondent thereafter moved to dismiss the Petition for failure to state a claim for which relief can be granted along with a Supporting Brief (Docket Entries 7, 8), and Petitioner responded in opposition (Docket Entry 12). Respondent did not submit a reply. (See Docket Entries dated Oct. 6, 2022, to present.)

## II. Ground for Relief

Petitioner alleges "Due Process rights violations secured by The U.S. Constitution (14th Amendment)" and "violations of rights secured by [North Carolina Department of Public Safety ('NCDPS')] policy [and] procedures" (Docket Entry 1, ¶ 12 (Ground One) (quotation marks omitted)), in that "[t]he [DHO] would not allow [Petitioner] to review/see any of their 'evidence' or allow [him] to refute any of their claims," and the DHO "told [Petitioner] that if [he] plead [sic] not guilty and had to go through the process, that [the DHO] would side with her officer and find [Petitioner] guilty anyway . . . and then simply stated to [Petitioner] that she would 'send [his] appeal papers' thus lacking impartiality due to her having a predisposed mindset as to finding [Petitioner] guilty" (id., ¶ 12 (Ground One)(a); see also Docket Entry 1-1 (Petitioner's "Declaration In Support of U.S.C. § 2254 Petition" setting forth, under penalty of perjury, additional facts in support of Ground One)).

### III. Discussion

In ruling on a Rule 12(b)(6) motion, "a court evaluates the [initiating pleading] in its entirety, as well as documents attached [to] or incorporated into th[at pleading]." <u>E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.</u>, 637 F.3d 435, 448 (4th Cir. 2011); <u>see also</u> Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts (providing that courts must assess sufficiency of Section 2254 petition on face of "the petition and any attached exhibits"). The Court may also consider documents attached to the motion to dismiss, so long as they qualify as "clearly integral to, and w[ere] relied upon in, the [initiating pleading,] and [ the petitioner] does not dispute [their] authenticity." <u>Blankenship v. Manchin</u>, 471 F.3d 523, 526 n.1 (4th Cir. 2006). Moreover, "[i]n reviewing a Rule 12(b)(6) [motion, a court] may properly take judicial notice of matters of public record." <u>Philips v. Pitt Cnty. Mem. Hosp.</u>, 572 F.3d 176, 180 (4th Cir. 2009); <u>see also</u> <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007) (observing that "sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss" include "the [initiating pleading] in its entirety, as well as . . . documents incorporated into th[at pleading] by reference, and matters of which a court may take judicial notice"). Typically, a "court cannot go beyond these documents" without "convert[ing] the motion into one for summary judgment." <u>E.I. du Pont</u>, 637 F.3d at 448.

-4-

Here, in support of the Motion, Respondent has submitted copies of 1) Petitioner's Prison Disciplinary Packet (Docket Entry 8-2), and 2) the NCDPS Offender Disciplinary Procedures (Docket Entry 8-3), which both contain documents neither appended to nor incorporated by reference into the Petition (compare Docket Entry 1, with Docket Entries 8-2, 8-3). Significantly, Petitioner disputes the authenticity of the uncertified, non-verbatim Record of Hearing contained within the Prison Disciplinary Packet (Docket Entry 8-2 at 21-22), which Petitioner did not sign (see id. at 22), and which Petitioner avers reflects "fabrications" by the DHO as to what transpired at the hearing (Docket Entry 1-1 at 6; see also id. at 4 (averring that DHO conducted hearing without hearing reporter in room), 7 (averring that DHO "forged" electronic signature of hearing reporter on Record of Hearing)). Furthermore, Respondent has made no showing that such internal prison disciplinary documents constitute a matter of public record. (See Docket Entry 8.) Those circumstances warrant conversion of the Motion into one for summary judgment. See E.I. du Pont, 637 F.3d at 448; see also Sira v. Morton, 380 F.3d 57, 67-68 (2d Cir. 2004) ("Because the [prison disciplinary] hearing transcripts were not incorporated into the complaint and because the district court did not exclude those documents from its consideration of [the] defendants' motion, we conclude that the district court was required to convert the motion to dismiss into one for summary judgment.").

When converting a motion to dismiss into a motion for summary judgment, the Court must give "'the parties a reasonable

opportunity to present all the material that is pertinent to the [converted] motion.'" Derosa v. Colvin, No. 5:14CV414, 2014 WL 5662771, at *2 (E.D.N.C. Nov. 4, 2014) (unpublished) (quoting Fed. R. Civ. P. 12(d)). "[T]he term 'reasonable opportunity' requires that all parties be given some indication by the court that it is treating the 12(b)(6) motion as a motion for summary judgment, with the consequent right in the opposing party to file counter affidavits . . . ." Gay v. Wall, 761 F.2d 175, 177 (4th Cir. 1985) (alteration and internal quotation marks omitted). However, "[a] party is deemed to have notice that a motion may be converted into one for summary judgment if that party 'should reasonably have recognized the possibility' that such a conversion would occur." Sira, 380 F.3d at 68 (quoting Gurary v. Winehouse, 190 F.3d 37, 43 (2d Cir. 1999)).

In this case, "[b]y attaching to their motion extensive materials that were not included in the pleadings, [Respondent] plainly should have been aware of the likelihood of such a conversion. Under such circumstances, [Respondent] cannot complain that [he] w[as] deprived of an adequate opportunity to provide the materials [he] deemed necessary to support [his] motion." Id. Moreover, after Respondent submitted evidence in support of the Motion "outside the pleadings, putting [Petitioner] on notice of possible conversion," Lake v. Astrue, Civ. No. 6:11-2107, 2012 WL 3135385, at *2 n.1 (D.S.C. Aug. 1, 2012) (unpublished) (citing Fornshill v. Ruddy, No. 95-2490, 89 F.3d 828 (table), 1996 WL 333223, at *2 (4th Cir. June 11, 1996) (unpublished)), the Clerk of

-6-

Court sent Petitioner a notice under <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), advising him that Respondent "filed a Motion to Dismiss on [June 6, 2022], which may or may not be supported by an affidavit," and that Petitioner "ha[d] the right to file a 20-page response in opposition to [Respondent]'s motion," as well as to, "if appropriate, [] file affidavits or evidence in rebuttal." (Docket Entry 9.) Petitioner thereafter filed a verified Response in Opposition to the Motion (Docket Entry 12), to which Petitioner attached his Affidavit (Docket Entry 12-1), signed under penalty of perjury (<u>see id.</u> at 2, 6). The undersigned United States Magistrate Judge therefore "concludes that [Petitioner] has been afforded a 'reasonable opportunity' to present materials relevant to h[is R]esponse," <u>Derosa</u>, 2014 WL 5662771, at *2, and will convert the Motion into a motion for summary judgment, <u>see</u> <u>Herbert v. Saffell</u>, 877 F.2d 267, 270 (4th Cir. 1989) (treating district court's holding as grant of summary judgment, where "[t]he [plaintiffs] had ample opportunity to bring forth evidence to show that genuine issues of material fact remained").[3]

---

[3] The Supreme Court has reiterated that "[a] document filed pro se is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (italics, internal citations, and internal quotation marks omitted). The Court, therefore, should construe Petitioner's verified Response and Affidavit as both an amendment to the Petition, as well as evidence in opposition to Respondent's converted motion for summary judgment. <u>See</u> 28 U.S.C. § 2242 (permitting "amend[ment] or supplement[ation of Section 2254 petitions] as provided in the rules of procedure applicable to civil actions"); Rule 12 of the Rules Governing Section 2254 Cases in the United States District Courts (setting forth that "[t]he Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or the[ R]ules [Governing Section 2254 Cases], may be applied to a proceeding under the[ R]ules [Governing Section 2254 Cases]; Fed. R. Civ. P. 15(a)(2) (providing that, when more than 21 days have passed after service of a responsive pleading, "a party may amend its pleading only with the opposing

(continued...)

In analyzing a summary judgment motion, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The movant bears the burden of establishing the absence of a genuine dispute of material fact, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), with "any factual assertion in the movant's affidavits . . . accepted . . . as being true unless the [non-movant] submits his own affidavits or other documentary evidence contradicting the assertion," Neal v. Kelly, 963 F.2d 453, 456 (D.C. Cir. 1992) (internal quotation marks omitted).

"While the Court will view the facts and inferences drawn in the light most favorable to the nonmoving party, the party opposing the motion for summary judgment must put forth specific facts showing a genuine issue for trial." Dunn v. Aclairo Pharm. Dev. Grp., 401(k) Plan, No. 1:15CV975, 2016 WL 592787, at *2 (E.D. Va. Feb. 10, 2016) (unpublished) (citing Anderson, 477 U.S. at 248). In that regard, the nonmoving party cannot rest on conclusory allegations or denials, and "[t]he mere existence of a scintilla of evidence" will not defeat a summary judgment motion. Anderson, 477 U.S. at 252, 256.

---

[3](...continued)
party's written consent or the court's leave," but that "[t]he court should freely give leave when justice so requires").

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). However, inmates possess a protected liberty interest in the award of statutory good time credits and, therefore, "the minimum requirements of procedural due process appropriate for the circumstances must be observed" at prison disciplinary hearings resulting in the loss of good time credits. Id. at 557. An inmate receives due process in conjunction with a prison disciplinary proceeding if he receives: (1) advance written notice of the disciplinary charge(s) at least 24 hours before his disciplinary hearing; (2) an opportunity, consistent with institutional safety and correctional goals, to present witnesses and documentary evidence in his defense; (3) a written statement by the fact finder(s) regarding the evidence relied on and the reasons for any disciplinary action; (4) assistance from prison staff or a competent fellow prisoner, if necessary to enable the inmate to comprehend his case and present evidence in his defense; and (5) a hearing conducted by an impartial fact-finder. See id. at 563-76; see also Clark, 2017 WL 3822898, at *5 (summarizing Wolff similarly). If the prison provides those protections and "some evidence" exists to support the resolution of the disciplinary charge, then the disciplinary proceedings have satisfied the Due Process Clause's procedural requirements. See Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454 (1985). As the following discussion makes clear, genuine issues of material

-9-

fact remain that preclude summary judgment on all but Petitioner's hearing recorder subclaim.

## A. Failure to Provide Petitioner with Drug Testing Policy

Petitioner first avers that "[t]he [DHO] would not allow [Petitioner] to review/see any of their 'evidence.'" (Docket Entry 1, ¶ 12(Ground One)(a); <u>see also</u> Docket Entry 1-1 at 4 (maintaining, under penalty of perjury, that, "[i]mmediately after pleading not guilty, [Petitioner] requested to the [DHO] that she disclose/provide to [him] all the statements and evidence that she had in her possession 'per policy' but[] she stated to [him that] '[he was] interpreting the policy wrong'"); Docket Entry 12 at 5-6 (setting forth substantially similar allegations under penalty of perjury); Docket Entry 12-1 at 1-2 (same).) In Petitioner's Response in Opposition to the Motion, he refined that subclaim by averring that, at the hearing, (A) he "asked for the Drug Testing Policy, [but] it was not provided to him" and (B) "[t]he Drug Test[ing] Policy would have aided Petitioner's defense by proving that the proper procedures were not followed by prison staff in conjunction with the way Petitioner was tested by Officer Fonvielle." (Docket Entry 12 at 6 (citing Docket Entry 8-2 at 41 (Petitioner's written statement in response to the A-12 charge reflecting his request for physical evidence in the form of "both drug panels," "the [urine specimen] cup with [his] initials on it," as well as "Policy [and] Procedures covering urine analysis")).)[4]

---

[4] The Record of Hearing recognized that Petitioner "requested both drug panels and the [urine specimen] cup with his initials on it as physical (continued...)

Petitioner additionally avers that he "only received th[e Drug Test Policy and Procedures] after [he] filed his instant [Petition]," and that "the [P]olicy . . . supports Petitioner's position that he was supposed to initial his [urine specimen] cup and write on the cup 'this is my cup,' [that] staff were required . . . to store the urine sample [] for further verification by a lab," and that "[t]he only time a specimen is discarded of is when tests come back with a negative finding." (Docket Entry 12 at 14 (all-caps font and underscoring omitted).)

Respondent counters that Petitioner "fail[ed] to assert what evidence the prison supposedly blocked" him from presenting (Docket Entry 8 at 6); however, the undersigned's recommendation that the Court construe Petitioner's verified Response in Opposition and Affidavit as both an amendment to the Petition and as a response in opposition to Respondent's converted motion for summary judgment defeats that contention.[5] As discussed above, those materials make

---

[4](...continued)
evidence," but noted that "th[o]se items are discarded for sanitation reasons after verification of results." (Docket Entry 8-2 at 21-22 (all-caps font omitted).) The Petition (and its supporting materials) do not assert that Respondent's failure to provide Petitioner with the drug panels and urine specimen cup at his disciplinary hearing constitutes a due process violation. (See Docket Entries 1, 12.)

[5] Even if the Court adjudicated Respondent's motion as one to dismiss under Rule 12(b)(6), Respondent's contention that Petitioner "fail[ed] to assert what evidence the prison supposedly blocked" him from presenting (Docket Entry 8 at 6) would not warrant dismissal. The Prison Disciplinary Packet which Respondent attached to its Supporting Brief contains not only Petitioner's administrative appeal statement that "[he] requested certain physical evidence be provided [at the hearing]," and that "[he] was not shown any that was gathered on [his] behalf, [and] was not even allowed to have or even review the policy [he] requested concerning urine analysis" (Docket Entry 8-2 at 8 (emphasis added)), but also Petitioner's written statement in response to the A-12 charge reflecting his request for physical evidence in the form of "both drug panels," "the [urine specimen] cup with [his] initials on it," as well as "Policy [and] Procedures (continued...)

clear that Petitioner "asked for the Drug Testing Policy, [but] it was not provided to him." (Docket Entry 12 at 6.)

Moreover, the Record of Hearing does not resolve the factual dispute regarding whether Petitioner received a copy of the requested drug testing policy either before or during his disciplinary hearing. Despite the Record of Hearing's acknowledgment that Petitioner (A) "requested the policy and procedures covering urinalysis" both in his written statement and at the hearing (Docket Entry 8-2 at 21; see also id. at 41 (Petitioner's written statement)), (B) maintained in his written statement that his A-12 charge "violat[ed ] policy and procedures," in that "officers would not allow him to see the [drug] panels and he didn't see a second dip panel" (Docket Entry 8-2 at 21 (all-caps font omitted); see also id. at 41 (Petitioner's written statement)), and (C) "questioned the integrity of the system and the individuals involved" at the hearing (id. at 22 (all-caps font omitted)), the Record of Hearing merely stated that "a copy of the urinalysis policy [wa]s attached to the disciplinary package and was reviewed by th[e] DHO" (id. (emphasis added) (all-caps font omitted); see also id. at 42-52 (Offender Drug Testing Policy contained within Prison Disciplinary Packet)). Notably, that statement fails to clarify whether prison officials provided Petitioner with a copy of the urinalysis policy prior to (or even during) the hearing. (See id.) Furthermore, Respondent has not

---

[5](...continued)
covering urine analysis") (id. at 41). Those circumstances would warrant allowing Petitioner an opportunity to amend.

-12-

made any showing that providing Petitioner with the requested policy either before or during his hearing would have "be[en] unduly hazardous to institutional safety or correctional goals," Wolff, 418 U.S. at 566.  (See Docket Entry 8.)

Given the foregoing facts, Petitioner has sufficiently shown (A) that he requested a copy of the drug testing policy prior to his hearing, (B) that he intended to utilize that policy during his hearing to show that prison officials failed to follow the policy in their handling of his urine specimen, (C) a genuine issue of material fact as to whether Petitioner received a copy of the policy either before or during the hearing, and (D) the absence of justification from Respondent for any failure to provide Petitioner with the policy.  See Sira, 380 F.3d at 74 ("An inmate's due process right to know the evidence upon which a discipline ruling is based is well established.  Such disclosure affords the inmate a reasonable opportunity to explain his actions and to alert officials to possible defects in the evidence. . . .  Withholding th[e requested] information from [the petitioner] . . . deprived him of any opportunity to explain or challenge th[at ] evidence . . . .  It is possible that on further development of the record [the] defendants will be able to justify withholding the [requested evidence] from [the petitioner].  But because no reasons are now before the court and because we review the record in the light most favorable to [the petitioner], we must conclude that he presents a viable due process claim based on non-disclosure of evidence . . . ." (internal citation omitted)).

In sum, the Court should deny Respondent summary judgment on this subclaim.

**B.    Absence of Hearing Recorder**

In support of this subclaim, Petitioner avers that the DHO conducted the hearing without a hearing recorder in contravention of "[NCDPS] policy and procedures" (Docket Entry 1-1 at 4), as well as "lie[d]" in the Record of Hearing by stating that "there was a 'hearing recorder' present," and by "forg[ing the] electronic signature" of the hearing recorder (id. at 7; see also Docket Entry 8-2 at 22 (Record of Hearing reflecting "Tedder, William A" as hearing recorder and bearing signature of "William Tedder" as witness to Petitioner's inability to sign Record of Hearing "due to restraints")).  In support of Petitioner's administrative appeal of his A-12 conviction, he submitted the statement of inmate Brandon T. Morris, who averred that he appeared before the same DHO on the same day as Petitioner's hearing, and that the DHO "was the only one in the room" with him.  (Docket Entry 8-2 at 18.)

This subclaim fails because, even assuming the truth of Petitioner's averments, he possessed no due process right to a hearing recorder at his prison disciplinary hearing.  See Johnson v. Director, TDCJ-CID, No. 6:13CV562, 2015 WL 1951647, at *5 (E.D. Tex. Apr. 29, 2015) (unpublished) (denying the petitioner's due process claim based on the DHO's interruption of the hearing recording, because the petitioner "ha[d] no constitutional right to have an audio recording of the hearing made"); Opel v. Department of Corr., Civ. No. C14-5160, 2014 WL 6654583, at *7 (W.D. Wash.

-14-

Nov. 24, 2014) (unpublished) ("Due Process does not mandate that prison officials record disciplinary hearings and not recording all or part of the hearing does not violate any duty or right owed to [the petitioner] under the Due Process Clause."); <u>Pettit v. Quarterman</u>, Civ. No. V-05-23, 2008 WL 4414321, at *3 (S.D. Tex. Aug. 21, 2008) (unpublished) ("[The p]etitioner ha[d] no due process right to have the proceedings of his disciplinary hearing recorded. The DHO's alleged refusal to turn on the recorder, then, violate[d] no right of [the p]etitioner's."); <u>Thompson v. Carrington</u>, No. 2:06CV2114, 2007 WL 2212676, at *2 (D.S.C. July 26, 2007) (unpublished) (holding that "[the petitioner] did receive the[] due process rights [guaranteed by <u>Wolff</u>] and he was simply not entitled to a tape recording of the disciplinary hearing"); <u>Benitez v. Schlaggel</u>, No. 93CV3960, 1995 WL 581716, at *5 (S.D.N.Y. Oct. 4, 1995) (unpublished) ("<u>Wolff</u>[] requires that a [DHO] provide a written statement of the evidence relied upon in reaching a decision and the reasons for that decision, but does not require a transcript or tape recording of the hearing.").

In short, the Court should dismiss Petitioner's hearing reporter subclaim.

## C. Barring Petitioner from Offering His Own Testimony

Petitioner next avers that "[t]he [DHO] would not . . . allow [him] to refute any of their claims," and that, "every time [he] attempted to present a defense, [the DHO] would cut [him] off and tell [him the DHO] didn't want to hear it." (Docket Entry 1, ¶ 12 (Ground One)(a).) According to Petitioner, "[he] told [the

DHO] . . . 'what [she was] doing [wa]s a violation of [Petitioner's] Due Process rights,'" and that "'[he] ha[d] a right to hear and be heard,'" but "the [DHO] rebutted 'not at Tabor Correctional you don't.'" (Docket Entry 1-1 at 5 (some internal quotation marks omitted); see also Docket Entry 12 at 6-8 (proffering, under penalty of perjury, substantively similar averments); Docket Entry 12-1 at 3 (same).)

"Due process requires that an inmate have the opportunity to be heard on the charges against him." Herbst v. Vannatta, 160 F. App'x 508, 509-10 (7th Cir. 2005) (citing Wolff, 418 U.S. at 566, and Battle v. Barton, 970 F.2d 779, 782 (11th Cir. 1992)). That right, however, "is not absolute," Martinez-DeLeon v. Holinka, 2009 WL 4350258, at 3 (W.D. Wis. Nov. 24, 2009) (unpublished), and the prison satisfies due process "so long as the reasons [for depriving an inmate of his rights] are logically related to institutional safety or correctional goals," Ponte v. Real, 471 U.S. 491, 497 (1985) (internal quotation marks omitted); see also Brown v. Braxton, 373 F.3d 501, 505 (4th Cir. 2004) (recognizing that prison may limit (or deny) inmate's right to present evidence in own defense at disciplinary hearing where "legitimate penological interests justified" such limitation or denial (citing Wolff, 418 U.S. at 566)). "[T]he burden of persuasion as to the existence and sufficiency of such institutional concerns . . . is borne by the prison officials, not by the prisoners." Grandison v. Cuyler, 774 F.2d 598, 604 (3d Cir. 1985) (citing Ponte, 471 U.S. at 499-500).

-16-

Respondent insists that the Record of Hearing shows that "Petitioner's arguments at the hearing were considered and, ultimately, rejected, given the evidence in the case." (Docket Entry 8 at 7; see also Docket Entry 8-2 at 22 (Record of Hearing stating that, "during the hearing, [Petitioner] questioned the integrity of the system and the individuals involved but did not deny the allegations" (all-caps font omitted)).)[6] That statement, at most, leaves the Court with a material factual dispute, in light of the uncertified, summary nature of the Record of Hearing and Petitioner's sworn statements that the DHO refused to provide Petitioner with an opportunity to testify on his own behalf (see Docket Entry 1, ¶ 12 (Ground One)(a); Docket Entry 1-1 at 5; Docket Entry 12 at 6-8; Docket Entry 12-1 at 3). Notably, Respondent has not attempted to show the existence of "reasons [for the DHO to refuse to take Petitioner's testimony which we]re logically related to institutional safety or correctional goals," Ponte, 471 U.S. at 497. (See Docket Entry 8.)

Under such circumstances, genuine issues of material fact remain that preclude summary judgment on Petitioner's claim that the DHO violated Petitioner's due process rights by failing to allow Petitioner to testify on his own behalf. See Jackson v. Cain, 864 F.2d 1235, 1252 (5th Cir. 1989) (reversing district court's grant of summary judgment for prison officials on due

---

[6] Although the Record of Hearing represents that, during the hearing, Petitioner "did not deny the allegations" (Docket Entry 8-2 at 22 (all-caps font omitted)), the Record earlier acknowledged both that Petitioner "pled not guilty to the A12 offense" (id. at 21 (all-caps font omitted)), as well as that, in Petitioner's written statement, he "state[d] the[] allegations are denied" (id. (all-caps font omitted)).

process claim, because the petitioner adequately established that prison officials violated the petitioner's due process rights under Wolff by, inter alia, denying him "the opportunity to make a statement" at his prison disciplinary hearing, which amounted to "giving [the petitioner] a constitutionally inadequate hearing or no hearing at all"); Mack v. Johnson, 430 F. Supp. 1139, 1145-46 (E.D. Pa. 1977) (denying certain prison officials' motions for summary judgment where "the questions which were put to [the petitioner] at the [prison disciplinary] hearing were merely conclusory inquiries in which he was directed either to admit or deny guilt without any adequate opportunity to explain his side of the story," and holding that the petitioner's procedural due process "rights were indeed violated by the frustration of his attempts to 'give his side of the story'").

**D.    Lack of Impartial Fact-Finder**

The Petition avers that the DHO "told [Petitioner] if [he] plead not guilty and [the DHO] had to go through the process, that [the DHO] would side with her officer and find [Petitioner] guilty anyway," and that "every time [he] attempted to present a defense [the DHO] would cut [him] off and tell [him the DHO] didn't want to hear it and . . . that she would 'send [Petitioner's] appeal papers' thus lacking impartiality due to her having a predisposed mindset as to finding [Petitioner] guilty." (Docket Entry 1, ¶ 12(Ground One)(a); see also Docket Entry 1-1 at 5-6 (Petitioner's Declaration under penalty of perjury containing similar averments).) More specifically, Petitioner avers under penalty of

-18-

perjury that the following sequence of events occurred at his prison disciplinary hearing:

> [The] DHO [] began by informing [Petitioner] that [he] was charged with an A-12 offense (failed urinalysis), then [the DHO] read out loud a lone [reporting] officer['s ] statement and asked, "how do you plead to an A-12 guilty or not guilty?" Whereupon [Petitioner] plead [sic] not guilty. Immediately after pleading not guilty, [Petitioner] requested of the DHO that she disclose and provide to [Petitioner] all the relevant statements and evidence that [the DHO] had in her possession per policy, as these items of evidence were necessary for [Petitioner's] proper and successful defense against the charge. [The] DHO [] stated to Petitioner, "you are interpreting the policy wrong and we don't do it that way at Tabor. I don't have to do that and I'm not going to do that." [Petitioner] was disheartened and offended by [the] DHO['s ] comments because the right to have evidence disclosed to an accused individual that will determine their innocence or guilt is the bedrock and a staple of Due Process. After [Petitioner's] not guilty plea, [the] DHO [] stated: "it would be in your best interest to plead guilty and accept presumptive punishment. [I]f I have to go through the report I'm gonna always side with my officer and find you guilty anyway." [Petitioner] told [the] DHO [], "I'm not guilty and what you are doing is a violation of my Due Process rights and is wrong." [Petitioner] further commented "I have a right to hear and be heard." Whereupon [the] DHO [] rebutted: "not at Tabor you don't." Even though [the DHO] made these comments and made known her predisposition [Petitioner] attempted to orally defend [him]self against this false and unsubstantiated charge any way and as [he] was speaking [he] was cut of[f] and halted by [the] DHO [], whereupon she stated: "I'll send your appeal papers, I will send your appeal papers!"

(Docket Entry 12-1 at 2-3 (missing apostrophe and closing quotation mark added) (capitalization, paragraph numbering, and paragraph spacing omitted).) According to Petitioner, the DHO's "statements alone show her lack of impartiality, her apathy to protecting the due process rights of accused prisoners, [and] her deliberate denial of making a meaningful effort to hear prisoner's oral defense while failing to disclose and or provide relevant evidence

in her possession to the accused." (Id. at 4.) Petitioner thus argues that Respondent deprived him of "a hearing before an impartial fact-finder – that is[,] one whose mind [wa]s not already made up and who c[ould] give [him] a fair hearing." (Docket Entry 12 at 9 (citing, inter alia, Surprenant v. Rivas, 424 F.3d 5, 17-18 (1st Cir. 2005), and Patterson v. Coughlin, 905 F.2d 564, 570 (2d Cir. 1990)).)

"A prisoner is entitled to have disciplinary charges against him considered by an impartial tribunal," Bennett v. King, Nos. 92-7056, 93-6263, 19 F.3d 1428 (table), 1994 WL 81270, at *1 (4th Cir. May 24, 1994) (unpublished) (citing Wolff), but "the degree of impartiality required of prison hearing officials does not rise to the level of that required of judges generally," Francis v. Coughlin, 891 F.2d 43, 46 (2d Cir. 1989) (citing Cleavinger v. Saxner, 474 U.S. 193, 203–04 (1985)). Nevertheless, "[t]he touchstone of due process is freedom from arbitrary governmental action," Ponte, 471 U.S. at 495 (citing Wolff, 418 U.S. at 558), and "[t]he due process requirements for a prison disciplinary hearing . . . are not so lax as to let stand the decision of a biased hearing officer," Edwards v. Balisok, 520 U.S. 641, 647 (1997).

In contrast to Petitioner's sworn account of the hearing, the Record of Hearing provides as follows:

> Summary of all information, evidence, or statements developed at the hearing relating to guilt or innocence:

> Based on the reporting party's statement on 3/4/2021 at approximately 11[:]15 hours Correctional Of[ficer] Hunter Fonvielle states he gave [Petitioner] a 5 panel drug test

-20-

that tested positive for THC. Officer Fonvielle states Sergeant Mercer was notified and [Petitioner] was given another test that was also positive for THC. Officer Fonvielle states [Petitioner] was notified of disciplinary action and identified by his OPUS. No contraband found. [Petitioner] was charged with an A12 offense.

Following the reading of the summary of evidence, [Petitioner] was explained his disciplinary and appeal rights. [Petitioner] pled not guilty to the A12 offense.

[Petitioner] did not request written statements, live witnesses, or staff assistance. [Petitioner] requested both drug panels and the cup with his initials on it as physical evidence as well as the policy and procedures covering urinalysis.

[Petitioner] did write a statement. [Petitioner] states these allegations are denied and in violation of policy and procedures. [Petitioner] states he has no history of drug use and has passed every one. [Petitioner] states the officers would not allow him to see the panels and he didn't see a second dip panel. [Petitioner] states he requests that the panels be provided to the DHO for purpose of physical evidence and the actual cup where he was supposed to initial so they wouldn't get his cup mixed up with anyone else's because there was [sic] 50 inmates who came in that day and many were not even tested which makes him feel like he was a target of reprisal from his previous facility[. Petitioner] states he got here on 03/04/21 and received this charge on the 9th. [Petitioner] states he request [sic] the urine analysis policy be provided.

Correctional Sergeant Kayla Mercer did write a statement. Sgt[.] Mercer states on 03/04/21 at 11[:]15 she observed a second drug test administered to [Petitioner]. Sgt[.] Mercer states [Petitioner's] drug test was positive for THC.

[Petitioner] requested the drug panels and the cup be present at his hearing as physical evidence but these items are discarded for sanitation reasons after verification of results.

A copy of the urinalysis policy is attached to the disciplinary package and was reviewed by this DHO.

[Petitioner]'s claims regarding timeframe were reviewed and there is no evidence to support that any relevant time frames were violated.

-21-

> During the hearing, [Petitioner] questioned the integrity
> of the system and the individuals involved but did not
> deny the allegations.
>
> Based on the reporting party's statement and the
> investigating officer's report, [Petitioner] is found
> guilty of the A12 offense. Sanctions imposed are
> consistent with current division policy; infraction
> history taken into consideration when applying sanctions.
>
> [Petitioner] restrained [and] unable to sign. He was
> provided a copy of the Record of Hearing, sanctions and
> appeal form. This was witnessed by Officer Tedder
> (TWA08).

(Docket Entry 8-2 at 21-22 (all-caps font omitted).) At the bottom
of the Record of Hearing, the line for Petitioner's signature reads
"unable to sig[n] due to restraints." (Id. at 22.)

As the above-quoted material makes clear, genuine issues of
material fact remain regarding whether Respondent provided
Petitioner with an impartial fact-finder in compliance with Wolff.
Petitioner's sworn averments differ sharply from the Record of
Hearing as to whether the DHO (1) made statements to Petitioner
indicating the DHO's predisposition to find Petitioner guilty, (2)
failed to show Petitioner the Offender Drug Testing Policy either
before or during the hearing; and (3) barred Petitioner from
testifying on his own behalf. Moreover, the Court cannot resolve
these evidentiary conflicts at the summary judgment stage,
particularly given that the Record of Hearing does not constitute
a verbatim (or certified) transcript of proceedings, lacks any
indication that the DHO took Petitioner's statements reflected
therein under oath, and does not contain Petitioner's signature.
(See id. at 21-22.)

The Second Circuit has persuasively addressed the types of partiality allegations in the prison discipline context that should withstand a motion for summary judgment. See Francis, 891 F.2d at 46. In that case, the prisoner "allege[d], *inter alia*, that [the DHO] suppressed evidence, distorted testimony, and never informed [the prisoner] of testimony against him." Id. The Second Circuit rejected the DHO's argument that the prisoner's "specifications of bias d[id] not show actual prejudgment" of the prisoner's case by the DHO, because "the issue ar[o]se[] on a motion for summary judgment[ and] all reasonable inferences [were] drawn in favor of [the prisoner]." Id. The court took care to note that "a plaintiff-inmate armed with nothing more than conclusory allegations of bias and prejudgment should not be able to defeat a well-supported motion for summary judgment," but held that the prisoner "ha[d] presented more than a mere conclusory allegation." Id.

Similarly, Petitioner here has presented, via sworn statements in the Petition and supporting materials, more than "mere conclusory allegation[s]" of partiality that should preclude summary judgment on this final subclaim. See McDowell v. Gates, No. 9:06CV1060, 2009 WL 3055270, at *8 (N.D.N.Y. Sept. 21, 2009) (unpublished) (holding that DHO's "act of preventing [the petitioner] from . . . offer[ing] a defense raises a question of fact as to [the DHO]'s impartiality[ and t]hus, [the] defendants' motion on this ground should be denied.").

## IV. Conclusion

The Motion relies on material outside the pleadings which requires its conversion to a summary judgment motion. Petitioner's hearing recorder subclaim fails as a matter of law, but material questions of fact remain as to all of his other subclaims.

**IT IS THEREFORE RECOMMENDED** (A) that the Motion (Docket Entry 7) be converted to a motion for summary judgment, (B) that summary judgment be granted for Respondent as to Petitioner's hearing recorder subclaim, but denied as to all of Petitioner's remaining subclaims, and (C) that this matter be set for an evidentiary hearing, with counsel appointed for Petitioner pursuant to Rule 8(c) of the Rules Governing Section 2254 Cases.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

February 2, 2023